IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AMY JERNIGAN, *et al.*
   *Plaintiffs*,

v.

PROTAS, SPIVOK & COLLINS, LLC.,
   *Defendant*.

Civil Action No. ELH-16-03058

**MEMORANDUM OPINION**

On September 15, 2017, the Court conducted a Class Action Fairness Hearing with respect to the proposed "Class Action Settlement Agreement And Release" ("Settlement Agreement"), docketed at ECF 18-1. By Final Order and Judgment of September 15, 2017 (ECF 29), this Court granted final approval of the Settlement Agreement, and dismissed all claims against defendant Protas, Spivok & Collins, LLC ("PSC"), for the reasons stated in open court. In the Order, the Court also approved three incentive awards of $4,000 each (totaling $12,000); designated the class of approximately 331 persons; appointed Class Counsel; awarded court costs of $884.23; approved pro rata payments from the Common Fund to the Class Members; and approved a *cy pres* award in accordance with the terms and designations in the Settlement Agreement.

Class Counsel had also moved for attorneys' fees (ECF 26), supported by a memorandum (*id.*) and a supplement (ECF 27), which includes time records for counsel (collectively, "Motion"). Declarations of Class Counsel were also submitted. *See* ECF 18-3, Declaration of Scott Borison, Esquire and Declaration of Phillip Robinson, Esquire; ECF 25-2, Declaration of Phillip Robinson, Esquire. The matter of counsel fees was fully addressed at the hearing. But,

for the reasons stated in open court, the Court held the matter of attorneys' fees under advisement.

No additional hearing is needed as to the Motion. *See* Local Rule 105.6. For the reasons stated below, I shall grant the Motion and award the requested counsel fees of $42,000.

**I.     Background**

The background of this case is set forth in the parties' submissions and was also set forth at the hearing held on September 15, 2017. I need not restate it here. I note, however, that the case is rooted in the filing of two class action suits in July 2016, both initiated in the Circuit Court for Anne Arundel County. One was filed by Amy Jernigan and William Bonilla ("Named Plaintiffs") and the other by Leo Farber ("Class Member"). The Jernigan/Bonilla case was removed to this Court; the Farber case was not removed. Both cases arise under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and include state law claims. Protas, Spivok & Collins, LLC, a law firm in Bethesda, Maryland, is the sole defendant.

In particular, plaintiffs seek statutory damages arising from PSC's efforts on behalf of LVNV Funding, LLC ("LVNV") to collect debts from the Named Plaintiffs, the Class Member, and a class of similarly situated persons, all of whom are consumers. The debt collection activity was allegedly based on void and unenforceable judgments obtained by LVNV while it was not a licensed collection agency in Maryland. ECF 2, ¶ 2; ECF 25-1 at 3. Defendant denied liability.

In the context of this case, the FDCPA caps the recovery of statutory damages at "the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(a)(2)(B). PSC's net worth was represented to be less than $1,000,000. ECF 25-1 at 3.

Based on the 1% FDCPA cap, the total class recovery, if the case were to go to trial, would be no more than $10,000.[1]

Notably, Class Counsel obtained a settlement fund of $105,000, which covers, *inter alia*, three incentive payments, counsel fees, and pro rata payments to class members. ECF 26 at 2. Of relevance here, Class Counsel seeks an award of attorneys' fees equal to 40% of the Common Fund, *i.e.*, $42,000. *Id.* at 8.

## II. Relevant Legal Principles

The FDCA allows for the recovery of a "reasonable attorney's fee." *See* 15 U.S.C. § 1692k(a)(3). Section 1692k(a)(3) states:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of . . . (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. . . .

Fed. R. Civ. P. 23(h) is also pertinent. It governs attorneys' fees in class actions and provides that a court may award "reasonable attorneys' fees . . . that are authorized by law or by the parties' agreement." Class Counsel represented at the hearing that their three original clients had agreed to a contingency fee of 40%.

Notably, a court bears the responsibility to determine that fees are reasonable, even in the absence of any objections. *See* Fed. R. Civ. P. 23(h), 1993 Advisory Committee notes. As the Advisory Committee notes indicate, "[t]he agreement by a settling party not to oppose a fee application up to a certain amount . . . is worthy of consideration, but the court remains responsible to determine a reasonable fee." *Id.*

---

[1] In an individual suit, the range of statutory damages under the FDCPA is $100 to $1,000.

In a class action, "[t]here are two methods commonly used for calculating an attorney's fee award: the lodestar method and the 'percentage of recovery' method." *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 481 (D. Md. 2014) (footnote omitted); *see also* Advisory Committee Notes to Rule 23(h) (indicating that a court may evaluate whether a fee award in a "common fund" case is reasonable based on either a percentage-of-recovery method or the lodestar method). "With either method, the goal is to make sure that counsel is fairly compensated." *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 681 (D. Md. 2013).

The United States Supreme Court has said that the "common-fund doctrine" entitles "'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client . . . to a reasonable attorney's fee *from the fund as a whole*.'" *U.S. Airways, Inc. v. McCutchen*, ____ U.S. ____, 133 S. Ct. 1537, 1545 (2013) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (emphasis added)). Conversely, "the percentage of recovery method" is an "inappropriate" method for determining attorneys' fees where "the attorneys' fees are not being deducted from the Plaintiffs' recovery." *Cerrato v. All. Material Handling, Inc.*, WDQ-13-2774, 2014 WL 7190687, at *4 (D. Md. Dec. 16, 2014); *see also Fangman v. Genuine Title, LLC,* RDB-14-081, ECF 411 at 9 (filed Nov. 18, 2016); *Durm v. American Honda Finance Corp.,* WDQ-13-223, 2015 WL 6756040 at *6 (D. Md. Nov. 4, 2015).

Typically, in a common fund case, courts favor the percentage-of-recovery method. *Decohen*, 299 F.R.D. at 481. *See, e.g.*, *In re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009) (endorsing percentage-of-recovery method to calculate attorney fee award out of settlement fund in nationwide products liability class action); *Durm*, 2015 WL 6756040, at *6; *see also* The Manual for Complex Litigation § 14.231 (4th ed. 2011) (reporting that "the vast majority of courts of appeals now permit or direct district courts to use the percentage method in common-fund

cases"). In particular, the "percentage of the recovery method involves an award based on a percentage of the class recovery, set by the weighing of a number of factors by the court." *Whitaker v. Navy Fed. Credit Union*, RDB-09-2288, 2010 WL 3928616, at *4 (D. Md. Oct. 4, 2010). It "is designed to allow courts to award fees from the fund 'in a manner that rewards counsel for success' . . . ." *In re Cendant Corp. PRIDES Litigation*, 243 F.3d 722, 732 (3rd Cir. 2001).

Of note, "the percentage method is more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases.'" *Singleton*, 976 F. Supp. 2d at 681 (citation omitted). "An attractive aspect of the 'percentage of recovery' method is its results-driven nature which 'ties the attorneys' award to the overall result achieved rather than the hours expended." *Id.* (citing *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 759 (S.D. W. Va. 2009)).

However, "because of the percentage of recovery method's limitations, courts often employ a lodestar multiplier cross-check to ensue the reasonableness of the award." *Decohen*, 299 F.R.D. at 481. *See, e.g.*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) ("encourag[ing] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage"); *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 475 (W. D. Va. 2011). Under the lodestar method, the appropriate fee award is determined by multiplying the reasonable hourly rate by the number of hours reasonably expended. *McAfee v. Boczar,* 738 F.3d 81, 88 (4th Cir. 2013), *as amended* (Jan. 23, 2014); *Grissom v. The Mills Corp.,* 549 F.3d 313, 320 (4th Cir. 2008).

As the Third Circuit has explained, "'[t]he lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial

litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation.'" *In re Cendant Corp.*, 243 F.3d at 732 (citation omitted). There is "a strong presumption that the lodestar number represents a reasonable attorney's fee." *McAfee*, 738 F.3d at 88-89) (internal quotation marks omitted).

In *Fangman*, RDB-14-081, Judge Bennett reiterated, ECF 411 at 21-22: "'The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar.'" (quoting *Singleton*, 976 F. Supp. 2d 688) (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3rd Cir. 2005)). Notably, "'where the lodestar fee is used as a mere cross-check to the percentage method of determining reasonable attorneys' fees, the hours documented by counsel need not be exhaustively scrutinized by the district court.'" *Singleton*, 976 F. Supp. 2d at 688 (quoting *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 385 (D. Md. 2006)). With respect to the appropriate multiplier, "[c]ourts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." *Singleton*, 976 F. Supp. 2d at 689 (citing *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 439 (D. Md. 1998)).

I shall use the "percentage of recovery" method to determine the award of attorneys' fees. However, I will cross-check the "percentage of recovery" analysis with a lodestar analysis. Notably, "using the percentage of fund method and supplementing it with the lodestar cross-check . . . take[s] advantage of the benefits of both methods." *Singleton*, 976 F. Supp. 2d at 681 (quoting *In re The Mills Corp. Securities Litig.*, 265 F.R.D. 246, 261 (E.D. Va. 2009)).

## III. Discussion

A. "Percentage of Recovery"

In applying the "percentage of recovery" method, courts have considered the following seven factors, *id.*:

> (1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy.

*Singleton*, 976 F. Supp. 2d at 682; *see also In re Cendant Corp.*, 243 F. 3d at 733; *The Kay Company v. Equitable Production Co.*, 749 F. Supp. 2d 455, 464 (S.D. W. Va. 2010); *In re The Mills*, 265 F.R.D. at 260-61. However, "fee award reasonableness factors 'need not be applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.' " *In re AT & T Corp.*, 455 F.3d 160, 166 (3d Cir. 2006) (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 301).

### a. Results Obtained

"[T]he most critical factor in calculating a reasonable fee award is the degree of success obtained." *McKnight v. Circuit City Stores, Inc.,* 14 F. App'x. 147, 149 (4th Cir. 2001). In this case, Class Counsel secured an excellent financial recovery when compared to the 1% FDCPA cap that would apply had the case proceeded to a trial. And, even in an individual action, the projected pro rata recovery exceeds the potential minimal award. As Judge Chasanow observed in *Singleton*, "[t]he fact that no objections have been filed further suggests that the result achieved is a desirable one." *Singleton*, 976 F. Supp. 2d at 683.

b. <u>Quality, Skill, and Efficiency of the Attorneys Involved</u>

Class Counsel are experienced litigators in the field of consumer litigation. They obtained a prompt and substantial settlement for the Class, totaling $105,000.

c. <u>Risk of Nonpayment</u>

"'In determining the reasonableness of an attorneys' fee award, courts consider the relative risk involved in litigating the specific matter compared to the general risks incurred by attorneys taking on class actions on a contingency basis.'" *Singleton*, 976 F. Supp. 2d at 683 (quoting *Jones*, 601 F. Supp. 2d at 762). "The risk undertaken by class counsel is evaluated by, among other things, . . . the ease of proving claims and damages, and, if the case resulted in settlement, the relative speed at which the case was settled." *Singleton*, 976 F. Supp. 2d at 683.

Here, the case was removed to this Court on September 2, 2016. ECF 1. On September 7, 2016, the parties jointly requested a settlement conference. ECF 9. Magistrate Judge Susan Gauvey conducted a settlement conference on November 1, 2016. *See* Docket. And, on January 12, 2017, the parties submitted a joint motion to approve the settlement agreement. ECF 18. In the interim, there was little in the way of active litigation. Settlement was promptly achieved.

Class Counsel has observed that "early settlement has reduced the burden on the judiciary by excessive motions practice and avoiding trial and a potential appeal . . . ." ECF 26 at 4. Moreover, they assert, *id.*: "Early settlement should not reduce the fees." And, they point to the work that was necessitated by the settlement itself. *Id.*

d. <u>Objections</u>

The Class members were notified of the proposed Settlement Agreement, their expected recovery, and Class Counsels's request for attorneys' fees. Paragraph 17 of the Notice (ECF 18-4) concerned proposed counsel fees. It said:

"17. *How will the lawyers be paid*:

Class Counsel will be paid a percentage of the Common Fund, determined by the Court."

To be sure, Class Counsel did not specify the percentage fee of 40% of the Common Fund, which they now seek. However, the lack of disclosure of the exact percentage does not foreclose inquiry by a Class member. "The lack of objections tends to show that at least from the class members' perspective, the requested fee is reasonable for the services provided and the benefits achieved by class counsel." *Singleton*, 976 F. Supp. 2d at 684 (D. Md. 2013).

e. Awards in Similar Cases

In *Singleton*, Judge Chasanow carefully considered percentage awards in a variety of contexts. *See* 976 F.Supp. 2d at 684-86. Of relevance here, she said: "Fees awarded under 'the percentage-of-recovery' method in settlements under $100 million have ranged from 15% to 40%." *Id.* (citing *Stoner v. CBA Information Services*, 352 F. Supp. 2d 549, 553 (E.D. Pa. 2005)). According to § 14.121 of the Manual for Complex Litigation, attorneys' fees awarded under the percentage of recovery methods generally range between 25% and 30% of the fund. *Singleton*, 976 F. Supp. 2d at 684.

On the other hand, Class Counsel point to several of their cases in this District in which fee awards were approved for 40% of the settlement fund. *See* ECF 26 at 5 (citing cases). *See*, *e.g.*, CCB-11-250, ECF 21 (Motion); ECF 24 (Order).

f. The Complexity and Duration of the Litigation

"'In evaluating the complexity and duration of the litigation, courts consider not only the time between filing the complaint and reaching settlement, but also the amount of motions practice prior to settlement, and the amount and nature of discovery.'" *Singleton*, 976 F. Supp. 2d at 686 (quoting *Jones*, 601 F. Supp. 2d at 761).

The entries on the docket here reflect that the parties engaged in settlement discussions almost immediately after the removal of the case, without engaging in motion practice. But, counsel may have engaged in informal discovery. In any event, the litigation was not protracted.

The complexity actually centered on issues concerning LVNV's conduct and whether its judgments were valid. However, those issues were not litigated in this case. Rather, they were litigated by plaintiffs' counsel in other proceedings in State court. *See Finch v. LVNV Funding, LLC*, 212 Md. App. 748, 71 A.3d 193 (2013); *see also LVNV Funding, LLC v. Finch*, 2017 WL 4074573 (Maryland Court of Special Appeals Sept. 14, 2017).

In my view, as a result of the resolution of the *Finch* case, this case was not complex; the validity of LVNV's judgments was resolved in State court.

g. Public Policy

"'The most frequent complaint surrounding class action fees is that they are artificially high, with the result (among others) that plaintiffs' lawyers receive too much of the funds set aside to compensate victims.'" *Singleton*, 976 F. Supp. 2d at 687 (quoting Report on Contingent Fees in Class Action Litigation, 25 Rev. Litig. 459, 466 (2006)). As Judge Chasanow said in *Singleton*, "in assessing the reasonableness of the requested attorneys' fees, the court must strike the appropriate balance between promoting the important public policy that attorneys continue litigating class action cases that 'vindicate rights that might otherwise go unprotected,' and perpetuating the public perception that 'class action plaintiffs' lawyers are overcompensated for the work that they do.'" *Singleton*, 976 F. Supp. 2d at 687 (quoting Third Circuit Task Force Report, 208 F.R.D. 340, 342, 344 (Jan. 15, 2002)). Notably, "[t]his concern is not a trivial one and requires attentiveness . . . in awarding fees." *In re the Mills Corp.*, 265 F.R.D. at 263; *see In*

*re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2nd Cir. 2008); *Singleton*, 976 F. Supp. 2d at 687.

The lack of an objection to the requested attorneys' fees does not preclude a reduction of the fee request. In *Singleton*, 976 F. Supp. 2d 665, Judge Chasanow reduced the fee award from 30% to 25% of the common fund, despite the absence of objections, concluding that it "would be more reasonable in light of . . . competing public policy concerns." *Id.* at 687. In her view, the "nominal reduction" from 30% to 25% recognized the risks borne by class counsel while also promoting the policy against excessive legal fees. *Id.* at 688. *See also*, *e.g.*, *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 630 (4th Cir. 1995) (finding that trial judge did not abuse his discretion in the award of a reduced attorney's fee, below the lodestar amount, in a FDCPA case).

B. Lodestar Cross-Check

A lodestar cross-check suggests that 40% is reasonable.

As indicated, under the "lodestar" method, a district court identifies a reasonable fee award by multiplying the reasonable hours expended by a reasonable hourly rate. *Grissom*, 549 F.3d at 320. The court may then adjust that award by employing a "multiplier" that is "derived from a number of factors, including the benefit obtained for the settlement class, the complexity of the case, and the quality of the representation." *Singleton*, 976 F. Supp. 2d at 689; *see Whitaker*, 2010 WL 3928616 at *4.

"The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar." *Singleton*, 976 F. Supp. 2d at 688 (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 306). As noted earlier, "'where the lodestar fee is used as a mere

cross-check to the percentage method of determining reasonable attorneys' fees, the hours documented by counsel need not be exhaustively scrutinized by the district court.' " *Singleton*, 976 F. Supp. 2d at 688 (quoting *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d at 385). "Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." *Singleton*, 976 F. Supp. 2d at 689 (concluding that a high multiplier is unreasonable in light of "the lesser complexity" of the case) (citing *Goldenberg*, 33 F. Supp. 2d at 439).

Courts sometimes consider in a cross check the factors outlined in the Fifth Circuit's decision in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *Johnson* was adopted by the Fourth Circuit in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (adopting the *Johnson* factors and "hold[ing] that any award must be accompanied by detailed findings of fact with regard to the factors considered"). The *Johnson* factors are as follows: (1) the time and labor expended; 2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *McAfee*, 738 F.3d at 88 n.5.

Class Counsel represent that they proceeded in this matter with their named clients on a contingency fee basis. ECF 26 at 4. At the Court's request, however, they provided time

records, including information as to their hourly rates. ECF 27. Because of the contingency fee arrangement with plaintiffs, counsel proceeded in this case without any guarantee that they would receive any payment for their time and effort. *Id.* Class Counsel's work in this case was entirely contingent on its success; had plaintiff's claims failed, counsel would have received nothing. ECF 66-2 at 6-7. That is a considerable risk. It is also worth noting that, at the Class Action Fairness hearing, defense counsel praised the work of Class Counsel.

Class Counsel point out that "[t]his Court has previously approved attorney fee awards on a percentage of the settlement fund" and assert that "[t]he percentage applied in nearly all cases has been 40%." *See* ECF 26 at 5. For example, in *Castillo v. Nagle & Zaller, P.C.*, WDQ 12-02338, Judge Quarles approved a 40% contingency fee settlement. ECF 18, ¶ 12. However, there are many cases in which a fee equal to 40% is not awarded. *See*, *e.g.*, *Fangman,* RDB-14-081, ECF 411 (RESPA case); *Singleton*, 976 F. Supp. 2d 665) (FCRA case).

In support of the percentage fee award, counsel cites *In re Abrams & Abrams, P.A.*, 605 F.3d 238 (4th Cir. 2010), which was not a class action case. In that personal injury case, with an $18 million settlement, the Fourth Circuit vacated the district court's decision to reduce counsel's fee award from the 33% contained in a contingency fee agreement to 3%. *Id.* at 240, 243. The Fourth Circuit noted that "courts evaluate attorney's fees under a reasonableness standard." *Id.* at 243. Moreover, "district courts have inherent power and an obligation to limit attorneys' fees to a reasonable amount." *Id.* But, the Court also said, *id.* at 245: "The chief error in the district court's analysis was its failure to recognize the significance of the contingency fee in this case." The Court observed "that contingency fee arrangements transfer a significant portion for the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk." *Id.* at 246.

Class Counsel's time records indicate that both Robinson and Borison billed at $450 per hour and their paralegal, Lauren Stone, billed at $110 per hour. ECF 27-1 at 5. Stone worked a total of 20.2 hours, valued at $2,222, on matters such as reviewing and editing the complaint, drafting intake sheets, preparing and serving filings, drafting settlement papers, and drafting the final approval motions. ECF 27-2 at 2. Robinson worked 36.4 hours, valued at $16,380, mostly in increments of 6 to 18 minutes, communicating with the clients, corresponding with opposing counsel, making "phone call[s] with [unnamed] class member about settlement" (ECF 27-2 at 4), and editing the final approval motion, among other tasks. *See* ECF 27-2 at 2-4). Borison worked 17.2 hours, valued at $7,740, mostly in increments of 30 minutes to an hour, and his work included editing the complaint, drafting the settlement demands, corresponding with opposing counsel, attending mediation, and communicating with the Court. *See* ECF 27-2 at 4-5. Collectively, this amounts to 73.8 hours of work, valued at $26,342.

Under Appendix B to this Court's Local Rules, titled "Rules And Guidelines For Determining Attorneys' Fees In Certain Cases," attorneys admitted to the Bar for 15 to 19 years may reasonably bill at the rate of $275-425 per hour. Lawyers admitted for 20 years or more may reasonably bill at $300-475 per hour. Here, both lawyers are seasoned consumer litigation lawyers. However, Mr. Robinson was not admitted to the Bar until 2000. Thus, his requested hourly rate of $450 exceeds the top end of the hourly rate set forth in Appendix B. Because of the use of an excessive hourly rate, the value of Robinson's time is overstated by about $900. However, neither attorney billed for preparation for the Class Action Fairness Hearing or for attending it. Those fees would readily offset the $900. Moreover, with a multiplier of 2, the lodestar amount exceeds the fees requested here.

## IV. Conclusion

For the reasons stated, I will approve the requested counsel fee award of 40% of the Common Fund, *i.e.*, $42,000. This case, monetarily, is a relatively small one. But, it is undoubtedly important to the class members. Certainly, it can be difficult to obtain counsel for a case in which the potential monetary recovery is relatively small. By agreeing to pursue this case, Class Counsel has obtained relief for a class that, in all likelihood, would have had no recourse in the absence of a class action. The Third Circuit recognized in *In re Cendant Corp.*, 243 F.3d at 732, in regard to a lodestar analysis, that in certain cases a lodestar fee award may be necessary in a case with a small monetary value, in order to incentivize a lawyer to take the case. That rationale is apt here.

An Order follows.

Date: September 20, 2017         /s/
                                 Ellen L. Hollander
                                 United States District Judge